**No. 26-5236**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALISHEA SOPHIA KINGDOM, SOLO NICHOLS, and JAS KAPULE,
on behalf of themselves and all persons similarly situated,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the
United States, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

## REPLY IN SUPPORT OF STAY PENDING APPEAL

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
CHARLES W. SCARBOROUGH
MCKAYE L. NEUMEISTER
DOMENIC A. CANONICO
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7246*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# TABLE OF CONTENTS

<u>**Page**</u>

TABLE OF CONTENTS ............................................................................ ii

INTRODUCTION ................................................................................... 1

ARGUMENT .......................................................................................... 3

I.     The Government Is Likely To Prevail On The Merits. ........................ 3

        A.    The district court erred in concluding that the Policy is arbitrary and capricious. ......................................................... 3

        B.    The preliminary injunction violates the PLRA and is overbroad................................................................................. 9

II.    The Remaining Factors Favor A Stay. ................................................ 11

CONCLUSION ....................................................................................... 13

CERTIFICATE OF COMPLIANCE

# INTRODUCTION

Plaintiffs' opposition fails to grapple with the government's primary arguments demonstrating that the district court's June 17 preliminary injunction is unlawful. As explained, in prohibiting the Federal Bureau of Prisons (BOP) from enforcing its 2026 Policy concerning medical treatment for inmates with gender dysphoria, the district court violated numerous principles of judicial review under the Administrative Procedure Act (APA), including substituting its own medical and policy judgments for those of the agency based on materials outside the administrative record. Having previously enjoined BOP's 2025 memoranda implementing the President's *Defending Women* Executive Order (EO), the court essentially ignored the robust new administrative record BOP compiled and the detailed explanations the agency gave for adopting the 2026 Policy. The court dismissed BOP's extensive analysis as "pretextual" and "reverse engineered" simply because the agency reached conclusions consistent with the EO, Add.25, but ironically the court's own cursory analysis reflects precisely the sort of reverse engineering to reach a predetermined result that the court wrongfully imputed to BOP. And the court paid little more than lip service to the needs-narrowness-intrusiveness requirements of the Prison Litigation Reform Act (PLRA).

Plaintiffs' defense of the district court's analysis (Resp.11-16) is remarkably tepid and cursory. They do not offer any substantive support for the court's extraordinary conclusion that the 2026 Policy was pretextual; they simply contest (Resp.16) whether this point was central to the court's analysis. And plaintiffs' arguments that the court correctly found the 2026 Policy to be "implausible" (Resp.13-15) simply underscore the degree to which the court strayed well beyond its narrow role under the APA, crediting evidence outside the administrative record to reach different conclusions from BOP over the appropriate treatment for gender dysphoria in the prison context.

Finally, in arguing that the balance of equities does not favor a stay, plaintiffs completely ignore this Court's June 17 order staying a prior injunction prohibiting enforcement of the same policy, which explained that the "Government is irreparably harmed by 'an improper intrusion by a federal court into the workings of a coordinate branch of the Government.'" *Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418, at *2 (D.C. Cir. June 17, 2026) (per curiam). Because the district court has once again improperly prevented BOP from implementing important policy choices in an area where the Executive enjoys significant deference, a stay is again warranted.

**ARGUMENT**

**I.     The Government Is Likely To Prevail On The Merits.**

**A.     The district court erred in concluding that the Policy is arbitrary and capricious.**

Plaintiffs do not seriously engage with the arguments in the government's stay motion. They instead disparage BOP's extensive explanations and evidence for its 2026 Policy as a mere "ruse" designed to get around the district court's June 2025 preliminary injunction. Resp.1.

After the district court enjoined BOP's initial memoranda implementing the EO, BOP did what a responsible agency should do. Bound on the one hand by the EO's directive to pursue a policy to the extent consistent with law, and on the other by a preliminary injunction finding its initial implementation insufficiently reasoned, BOP undertook to carefully study the issue of gender-dysphoria treatments in the carceral setting and produced a reasoned explanation for its new policy, backed by an extensive administrative record. *See* Dkt. 151. Far from being a "ruse," Resp.1, or a "repackag[ing]" of the 2025 implementation efforts, Dkt. 179-1, at 35, that thorough process reflects an agency seeking to discharge its obligations responsibly and lawfully. The district court erred in concluding that plaintiffs were likely to succeed on the merits of their APA claim challenging BOP's new policy.

3

**1.** The district court's conclusion that the 2026 Policy was "pretextual" violates Supreme Court precedent and disregards the President's authority over Executive Branch policymaking. Mot.12-14. Plaintiffs offer no substantive response. Instead, they largely abandon this rationale, claiming it "was not the 'crux' of the court's decision." Resp.16. The record demonstrates otherwise.

The district court's conclusion that the 2026 Policy was impermissibly preordained was itself improperly predetermined by the court. In June 2025, the court first enjoined BOP from implementing the 2025 policy, on the ground that "BOP's only explanation for its new policies is that the [EO] required the adoption of those policies." Dkt. 67, at 21-22 (emphasis omitted). BOP subsequently completed a nearly 12-month process of "evaluating its medical policies," Dkt. 186-1, at 1, and issued its 2026 Policy, supported by 47 pages of explanation and a more than 3,000-page record. But less than three hours after this Court stayed the district court's improper administrative injunction against the 2026 Policy, *see Kingdom*, 2026 WL 1905418, the court issued a new injunction based on arbitrary-and-capricious grounds materially similar to the ones identified in the court's June 2025 injunction.

The court's view that the 2026 Policy was preordained fatally tainted its entire analysis. Indeed, the court determined that the two other purported arbitrary-and-capricious defects it identified *flowed from* the core finding that BOP had reverse engineered the outcome, Add.26; *see* Add.20, 25-27; *see also* Dkt. 179-1, at 34-36. Specifically, the court concluded that, because BOP was pursuing a preordained outcome, the agency ignored or disregarded relevant evidence and instead provided pretextual explanations for the Policy. Add.26-27. Plaintiffs' contention that the court's pretext finding was not central to its analysis thus fails.

**2.** Plaintiffs also fail to meaningfully respond to the government's arguments regarding the district court's implausibility finding—which relied almost entirely on materials outside the administrative record, contrary to basic rules of administrative law. Mot.15-16. Plaintiffs contend that this case satisfies an exception to the rule against considering extra-record materials. Resp.15 (quoting *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)). But those exceptions are "quite narrow and rarely invoked." *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014). Plaintiffs do not satisfy them. There are no "gross procedural deficiencies" here, and "the administrative record itself" is not "so deficient as to preclude effective review." *Hill Dermaceuticals, Inc.*

*v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013).  Indeed, plaintiffs never raised this exception below and the court did not invoke it.

Plaintiffs also assert (Resp.13-15) that BOP's Policy is implausible given the evidence before the agency.  But as explained (Mot.16-17), BOP addressed contrary evidence in the record regarding the use of sex-rejecting interventions, disagreed with that evidence, and explained why it concluded that those were not appropriate treatments for the inmates in its custody.  Rather than acknowledge BOP's explanations, the district court simply imposed its own views about what evidence should be believed, which violated basic limitations on judicial review under the APA, Mot.17, and the Supreme Court's recent admonitions that courts are not equipped "to meaningfully evaluate ... considered policy judgments" involving "medical and scientific matters where there is serious debate," *West Virginia v. B.P.J.*, 609 U.S. ___, 2026 WL 1868739, at *15 (June 30, 2026).

Plaintiffs' only response is to repeat the district court's error and assert that BOP ignored evidence in the administrative record that does not support withholding hormones and social accommodations.  *See* Resp.14-15.  But the existence of such evidence in the record underscores that BOP reviewed a wide range of materials reflecting different viewpoints in formulating the Policy.  Far from ignoring that evidence, BOP explained why it reached

contrary conclusions after weighing the totality of the evidence and the expert judgments of prison officials with many years of experience in this area. *See* Mot.16-17.

**3.** Nor do plaintiffs meaningfully defend the district court's conclusion that BOP ignored its own prior experience. As the government explained (Mot.17-21), BOP officials reasonably relied on their prior experience in formulating the 2026 Policy; the agency was not required to commission formal studies or review thousands of individual files to invoke that expertise.

Plaintiffs do not dispute that the APA did not require BOP to produce a study based on inmates' treatment experiences before modifying its policies, but they nevertheless insist that BOP ignored "evidence already in [its] possession ... underlying BOP's pre-EO policy." Resp.13. That argument is meritless. Plaintiffs do not dispute that BOP does not possess medical case studies of inmates evaluating prior treatments, or that reviewing any bare treatment notes that BOP does possess, alone, would not provide useful, scientifically acceptable information regarding the effectiveness or harm of particular treatments. *See* Mot.19. The district court thus erred in concluding that BOP failed to consider any evidence that it was required to consider under the APA.

Plaintiffs also invoke a lack of evidence regarding "security concerns." Resp.13. But again, BOP may generally rely on officials' experience and expertise regarding such concerns. *See, e.g.*, Dkt. 186-1, at 2 ("BOP incarcerates sexual predators and other violent individuals who have a tendency to prey upon inmates who appear feminine, including due to hormones or social accommodations, requiring BOP staff to devote more attention and time to keeping these inmates safe."). Moreover, as BOP explained, its "medical concerns," and "security and prison-administration concerns" would each separately justify the 2026 Policy. *Id.* at 33. Accordingly, any deficiency in the evidence related to security concerns would not provide a sufficient basis to invalidate the entire policy. *See* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error.").

Plaintiffs also take issue with the government's submission of Dr. Stahl's declaration. Resp.12-13. As the government explained (Mot.18), Dr. Stahl—the official who certified the administrative record in this case, Dkt. 151—simply confirmed that BOP officials involved in formulating the 2026 Policy considered their experience under the prior policy as part of that process. In repeating the district court's erroneous conclusion that the declaration is a post-hoc rationalization, plaintiffs fail to appreciate the difference between a mere explanation about *how* an agency conducted its

decisionmaking—which permissibly "furnishes an explanation of the administrative action that is necessary to facilitate effective judicial review"—and "'new rationalizations'" that impermissibly seek to support the substantive decision originally reached. *Olivares v. Transportation Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir. 2016).

## B. The preliminary injunction violates the PLRA and is overbroad.

Plaintiffs' attempts to defend the breadth of the injunction likewise fail, particularly given the PLRA's stringent limitations on relief.[1]

**1.** As the government explained (Mot.22-23), the preliminary injunction clearly violates the PLRA, 18 U.S.C. § 3626(a)(2), by enjoining aspects of the policy that do not harm plaintiffs. Plaintiffs do not even attempt to claim that the injunction complies with § 3626(a)(2). *See* Resp.16-18. That alone is sufficient basis for staying the injunction.

Plaintiffs instead focus on the government's separate argument (Mot.21), that the district court failed to make sufficient findings under the PLRA. Plaintiffs contend (Resp.16-17) that the district court was not required to make "explicit findings" here, but they misunderstand the

---

[1] Contrary to plaintiffs' assertion (Resp.16), the government did not forfeit any challenge to the scope of preliminary-injunctive relief. *See* Dkt. 186, at 43.

statute. Although § 3626(a)(2) specifically governs "preliminary injunctive relief," § 3626(a)(1) applies to "any prospective relief." 18 U.S.C. § 3626(a). And the PLRA defines "'prospective relief'" to "mean[] all relief other than compensatory monetary damages." *Id.* § 3626(g)(7). As a form of prospective relief, preliminary injunctions are subject to § 3626(a)(1)'s findings requirement.

Plaintiffs also suggest that the district court satisfied the findings requirement by "expressly conclud[ing]" that the PLRA's need-narrowness-intrusiveness requirements were satisfied. Resp.17. But such conclusory assertions—lacking any supporting explanation—do not *in fact* comply with the PLRA's command that a court "find[] that [the] relief" it enters satisfies those requirements. 18 U.S.C. § 3626(a)(1). The statute demands "factual findings" supporting a court's conclusion that the PLRA has been satisfied. *E.g.*, *Doe v. Cook County*, 798 F.3d 558, 566 (7th Cir. 2015).

**2.** The government also argued that the district court could not properly enjoin the 2026 Policy in its entirety because, on plaintiffs' own theory, they are injured only by the provisions of the Policy governing hormones and social accommodations. Mot.22-23. Plaintiffs' only response is to claim that the Policy "as a whole fails arbitrary-and-capricious review," and thus that it was proper to enjoin the entire Policy. Resp.17-18. That

10

confuses the merits with the remedy. Regardless of the merits of the Policy, any "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (citation modified). The PLRA establishes even more stringent requirements: a preliminary injunction may not "extend … further than necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

3. As the government also explained (Mot.23-24), class-wide relief is inappropriate because, even on plaintiffs' view, some members of the class would not receive sex-rejecting interventions under any policy and thus ultimately suffer no harm from the 2026 Policy. Plaintiffs do not dispute that assertion. *See* Resp.18-19. Accordingly, assuming plaintiffs have established any entitlement to relief, it cannot extend beyond the specific class members who have provided declarations alleging harm from the 2026 Policy.

## II. The Remaining Factors Favor A Stay.

This Court already found that the remaining equitable factors favor the government when it granted the government's last stay motion. *See Kingdom*, 2026 WL 1905418, *1-2. Plaintiffs do not even acknowledge this fact, much less identify any reason why the prior stay panel's assessment of the equities does not apply equally here. Instead, plaintiffs repeat the same

arguments that this Court previously rejected. *See* Resp.19-22; Stay

Opposition 11-15, *Kingdom v. Trump*, No. 26-5181 (D.C. Cir. June 4, 2026).[2]

Plaintiffs also emphasize (Resp.20-21) that the government has been

enjoined in this case for over a year. But that delay merely underscores that

the equities tip decidedly in favor of granting a stay. After the district court

enjoined the 2025 memoranda for lack of sufficient explanation, BOP

undertook an extensive study of the issue, compiled a voluminous record of

sources considered, and issued a new policy supported by a lengthy

explanatory memorandum detailing the reasons for its decision. The time

BOP took to issue a more fully reasoned policy underscores that the agency

did not rush to a "reverse-engineered" outcome, and that delay (during

which BOP has now been enjoined for over a year) only underscores the need

for this Court's intervention to prevent the district court from continuing to

thwart BOP's efforts to implement the EO and provide appropriate treatment

for gender dysphoria to the inmates in its care.

---

[2] Although plaintiffs suggest (Resp.20) that the government forfeited irreparable injury by failing to raise it in the district-court stay motion, plaintiffs cite no authority for the proposition that the appellate-forfeiture principle applies in this context. In any event, the government adequately raised the harms to its interests below. *See* Dkt. 222, at 1-2 (referencing Dkt. 186, at 44-45).

**CONCLUSION**

This Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
CHARLES W. SCARBOROUGH
*/s/ McKaye L. Neumeister*
MCKAYE L. NEUMEISTER
DOMENIC A. CANONICO
*Attorneys, Appellate Staff*
*Civil Division, Room 7246*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*
*McKaye.L.Neumeister@usdoj.gov*

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,444 words.  This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

/s/ McKaye L. Neumeister
McKaye L. Neumeister